**GUCOVSCHI LAW FIRM, PLLC.**
Adrian Gucovschi (State Bar No. 360988)
Nathaniel Haim Sari (State Bar No. 362634)
165 Broadway, 23rd Floor
New York, NY 10006
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gucovschilaw.com
nathaniel@gucovschilaw.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
jglatt@bursor.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DEVAN MARTIN and KIMBERLY ALLEN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HERO LABS, INC.,<br><br>Defendant. | Case No. 3:26-cv-10433-WHO<br><br>**FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>**<br><br>Hon. William H. Orrick |

Plaintiffs Devan Martin and Kimberly Allen ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Hero Labs, Inc. ("Defendant"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF THE ACTION

1. Plaintiffs bring this class action on behalf of themselves and all similarly situated consumers who purchased Hero Bread products containing allulose and marketed as containing zero grams of sugar (the "Products"). [1]

2. Defendant markets and advertises the Products on their front labels and official product pages as containing "0G SUGAR" (the "Sugar Representations"). However, unbeknownst to consumers, the Products contain sugar in the form of allulose. Allulose is a monosaccharide and, therefore, a sugar under the applicable federal labeling standards.

3. Defendant's own information discloses that the Products contain between 1 and 8 grams of allulose per labeled serving. Those disclosed amounts of sugar contradict the Sugar Representations. Defendant's Sugar Representations are therefore false, misleading, and unlawful.

4. Accordingly, Plaintiffs bring claims against Defendant for violations of: (1) California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; (2) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*; (3) California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.*; (4) Illinois' Consumer Fraud and Deceptive Business Practices Act 815 § 505/1, *et. seq.*; and (5) unjust enrichment.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because the proposed Classes include more than 100 members, the aggregate claims

[1] The Products are the allulose-containing versions of: (1) Classic Burger Buns; (2) Classic Hot Dog Buns; (3) Flour Tortillas (8-count, 12.4 oz./352 g., canola-oil formulation); (4) Buttermilk Biscuit; (5) Cheddar Biscuit; (6) Pumpkin Spice Scone; (7) Orange Scone; (8) Lemon Poppy Seed Scone; and (9) Pain au Chocolat. Versions that do not contain allulose are excluded.

of the proposed Classes exceed $5,000,000, exclusive of interest and costs, and at least one member of the proposed Classes is a citizen of a state different from Defendant.

6. This Court has personal jurisdiction over Defendant because Defendant has its principal place of business in California and therefore is at home in this State.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant conducts substantial business in this District, is at home in this district, and a substantial part of the events giving rise to Plaintiff Martin and the class members' claims took place in this District.

**PARTIES**

8. Plaintiff Devan Martin is a citizen of California residing in Los Angeles, California. While residing there, Plaintiff Martin purchased Hero Bread Classic Burger Buns (the "Burger Buns Product") for his personal use from a local Bristol Farms store in West Hollywood, California, on September 3, 2026, for $10.00. Before making his purchase, Plaintiff Martin saw and relied on the Burger Buns Product's prominent "0G SUGAR" representation. Based on that representation, Plaintiff Martin reasonably believed that the Burger Buns Product contained zero grams of sugar per bun. The representation was part of the basis of Plaintiff Martin's bargain, and he would not have purchased the Burger Buns Product on the same terms had he known it was untrue. Plaintiff also paid a price premium because of Defendant's false and misleading "0G SUGAR" representation but did not receive the benefit of his bargain because each bun contains 1 gram of allulose, a sugar. Had Plaintiff Martin known the truth, he would not have purchased the Burger Buns Product or would have paid substantially less for them.

9. Plaintiff Martin remains interested in purchasing burger buns that truly contain zero grams of sugar. However, he cannot know for certain whether Defendant's false labeling has been or will be corrected, and the Burger Buns Product's composition may change over time. If Defendant continues to make the "0G SUGAR" representation, Plaintiff Martin will be unable to make informed purchasing decisions and is likely to be misled again unless Defendant is required to ensure that the Burger Buns Product's labeling is accurate. Plaintiff is an average consumer who is not sophisticated in the chemistry, manufacturing, or formulation of food products. Neither Plaintiff Martin nor reasonable consumers have the specialized knowledge needed to determine independently whether

allulose is a sugar.

10. Plaintiff Kimberly Allen is a citizen of Illinois residing in Chicago, Illinois. While there, Plaintiff Allen purchased Defendant's Hero Classic Burger Buns, Hero Classic Hot Dog Buns, and Hero Flour Tortillas (8-count, 12.4oz/352g., canola-oil formulation) from a Jewel-Osco store in Evanston, Illinois in or around July 2024. Prior to making her purchases, Plaintiff Allen saw and relied on Defendant's "0G SUGAR" representations prominently on the front labels. Based on that representation, Plaintiff Allen reasonably believed that the Products contained zero grams of sugar. The representations were part of the basis of Plaintiff Allen's bargain, and she would not have purchased the them on the same terms had she known they were untrue. Plaintiff Allen also paid a price premium because of Defendant's false and misleading "0G SUGAR" representation but did not receive the benefit of her bargain because the Products contained at least 1 gram of allulose, a sugar. Had Plaintiff Allen known the truth, she would not have purchased the Burger Buns Product or would have paid substantially less for them.

11. Plaintiff Allen remains interested in purchasing food products that truly have zero sugar. However, she cannot know for certain whether the false labeling and marketing of the Products have been or will be corrected, and the Products' composition may change over time. If Defendant continues to make the Representations, Plaintiff Allen will be unable to make informed purchasing decisions and is likely to be misled again unless Defendant is required to ensure that the Products' marketing is accurate. Plaintiff Allen is an average consumer who is not sophisticated in the chemistry, manufacturing, or formulation of food and beverage products. Neither Plaintiff Allen nor reasonable consumers have the specialized knowledge needed to determine independently whether allulose is a sugar.

12. Defendant Hero Labs, Inc. is a corporation organized under the laws of Delaware with its principal place of business and headquarters in San Francisco, California. Defendant formulates, labels, distributes, and/or sells the Products throughout California and the United States, including this District.

## FACTUAL ALLEGATIONS

### A. Consumers Seek Out and Pay More for Products That Contain No Sugar

13. Consumer demand for products without sugar is well documented. A 2022 nationwide survey found that 73% of Americans ages 18 to 80 reported trying to limit or avoid sugars.[2]

14. That demand accords with widespread public-health guidance. The 2025–2030 Dietary Guidelines for Americans state that no amount of added sugars is recommended or considered part of a healthy or nutritious diet and that one meal should contain no more than 10 grams of added sugars.[3] The World Health Organization recommends limiting free sugars to less than 10 percent of total daily energy intake and states that limiting them further to 5 percent or less may provide additional health benefits.[4] The American Heart Association recommends limiting added sugars to no more than 6 percent of daily calories.[5] This guidance reinforces consumers' attention to quantitative representations about how much sugar products contain.

15. Food and beverage manufacturers are aware of this demand and of the premium consumers will pay to satisfy it. Products labeled as containing zero grams of sugar command higher prices than comparable products that do not bear those claims, and manufacturers reserve the front principal display panel of their packaging for the claims they believe will most motivate a purchase.

16. Defendant has capitalized on that demand. It sells the Products containing allulose—a monosaccharide sugar—while representing on their front labels and official product pages that they contain zero grams of sugar. Defendant thereby obtained an unfair competitive advantage over competitors that accurately label comparable products, at the expense of unwitting consumers.

---

[2] International Food Information Council, 2022 Food & Health Survey 57 (May 18, 2022), https://ific.org/wp-content/uploads/2022/06/IFIC-2022-Food-and-Health-Survey-Report-May-2022.pdf.

[3] U.S. Department of Health and Human Services & U.S. Department of Agriculture, Dietary Guidelines for Americans, 2025–2030, at 5 (Jan. 2026), https://cdn.realfood.gov/DGA.pdf.

[4] World Health Organization, Healthy Diet (Jan. 26, 2026), https://www.who.int/news-room/fact-sheets/detail/healthy-diet.

[5] American Heart Association, Added Sugars, https://www.heart.org/en/healthy-living/healthy-eating/eat-smart/sugar/added-sugars.

### B. Defendant's Sugar Representations

17. Defendant prominently makes the Sugar Representations on the front labels of Classic Burger Buns, Classic Hot Dog Buns, and Flour Tortillas, and on the official product pages for Buttermilk Biscuit, Cheddar Biscuit, Pumpkin Spice Scone, Orange Scone, Lemon Poppy Seed Scone, and Pain au Chocolat. The Products, Sugar Representations, and accompanying ingredient and nutrition information are depicted below:

**01 Hero Classic Burger Buns**

PRINCIPAL DISPLAY PANEL




NUTRITION FACTS / INFORMATION PANEL




FRONT-LABEL CLAIM

0G SUGAR*

CARBOHYDRATE / SUGAR ROWS

| | | |
|---|---|---|
| Total Carbohydrate 23g | | 8% |
| Dietary Fiber 22g | | 79% |
| Total Sugars 0g | | |
| Includes 0g Added Sugars* | | 0% |

DISCLOSED ALLULOSE CALCULATION

23G TOTAL CARBOHYDRATES
- 22G DIETARY FIBER
- 1G ALLULOSE*

0G NET CARBOHYDRATES

INGREDIENTS INCLUDING ALLULOSE

INGREDIENTS: Water, Resistant Wheat Starch, Wheat Protein, Olive Oil, Yeast, Contains less than 2% of Fava Bean Protein, Milled Flaxseed, Vinegar, Salt, Guar Gum, Allulose*, Cultured Wheat Flour, Wheat Flour, Natural Flavors, Monk Fruit Extract, Enzymes, Ascorbic Acid, Sunflower Lecithin.
CONTAINS: Wheat

BACK-LABEL ALLULOSE DISCLOSURE

*Allulose adds a dietarily insignificant amount of sugar, which is not metabolized like other sugars.

FRONT-LABEL ALLULOSE DISCLOSURE

PER SERVING | *NOT A LOW-CALORIE FOOD | *CONTAINS ALLULOSE. SEE NUTRITION FACTS

Bristol Farms package front and back; 8-count, 17.5 oz package.
Source: https://shop.bristolfarms.com/store/bristol-farms/products/46243096-hero-classic-burger-buns-8-pack

1 / 9

## 02 Hero Classic Hot Dog Buns

**PRINCIPAL DISPLAY PANEL**




**NUTRITION / INGREDIENTS GRAPHIC**




**FRONT-LABEL CLAIM**

0G SUGAR*

**DISCLOSED ALLULOSE CALCULATION**

23g TOTAL CARBOHYDRATES
-22g DIETARY FIBER
-1g ALLULOSE

**CARBOHYDRATE / SUGAR ROWS**

| | |
|---|---|
| TOTAL CARBOHYDRATE 23g | 8% |
| DIETARY FIBER 22g | 79% |
| TOTAL SUGARS 0g | |
| INCLUDES 0g ADDED SUGARS | 0% |

**INGREDIENTS INCLUDING ALLULOSE**

INGREDIENTS
Water, Resistant Wheat Starch, Wheat Protein, Olive Oil, Yeast, Fava Bean Protein, Milled Flaxseed, Contains less than 2% of Vinegar, Salt, Guar Gum, Allulose, Cultured Wheat Flour, Natural Flavors, Monk Fruit Extract, Enzymes, Ascorbic Acid, Sunflower Lecithin.

**FRONT-LABEL ALLULOSE DISCLOSURE**

PER SERVING | *NOT A LOW-CALORIE FOOD | *CONTAINS ALLULOSE, SEE NUTRITION FACTS

Package front and manufacturer nutrition graphic from the Walmart listing.
Source: https://www.walmart.com/ip/0g-Net-Carb-Hero-Classic-Hot-Dog-Buns-4-packs-of-8-Buns/5675098298

2 / 9

## 03 Hero Flour Tortillas - 8 Count

PRINCIPAL DISPLAY PANEL




NUTRITION FACTS / INFORMATION PANEL




FRONT-LABEL CLAIM

0G SUGAR

DISCLOSED ALLULOSE CALCULATION

16G TOTAL CARBOHYDRATES
– 15G DIETARY FIBER
– 1G ALLULOSE

0G NET CARBOHYDRATES

CARBOHYDRATE / SUGAR ROWS

| | |
|---|---|
| **Total Carbohydrate** 16g | **6%** |
| Dietary Fiber 15g | **54%** |
| Total Sugars 0g | |
| Includes 0g Added Sugars | **0%** |

INGREDIENTS INCLUDING ALLULOSE

**INGREDIENTS:** Water, Resistant Wheat Starch, Wheat Protein, Canola Oil, Milled Flaxseed, Contains 2% or less of: Leavening (Calcium Acid Pyrophosphate, Calcium Sulfate, Potassium Bicarbonate, Calcium Carbonate), Allulose, Salt, Fava Bean Protein, Yeast, Guar Gum, Calcium Propionate and Fumaric Acid (to retain freshness), Enzymes.

8-count, 12.4 oz package; canola-oil formulation.
Source: https://www.instacart.com/products/28508553-hero-tortillas-12-4-oz

3 / 9

## 04 Hero Buttermilk Biscuit

WEBSITE CLAIM




NUTRITION / INGREDIENTS GRAPHIC




WEBSITE SUGAR CLAIM

0g Sugar

DISCLOSED ALLULOSE CALCULATION

22g TOTAL CARBOHYDRATES*
-20g DIETARY FIBER
-1g ALLULOSE*

GRAPHIC ALLULOSE DISCLOSURE

*Per serving. Not a low-calorie food. Contains allulose, see nutrition facts. Allulose adds a dietarily insignificant amount of sugar, which is not metabolized like other sugars.

CARBOHYDRATE / SUGAR ROWS

| | |
|---|---|
| TOTAL CARBOHYDRATE 22g | 8% |
| DIETARY FIBER 20g | 71% |
| TOTAL SUGARS 0g | |
| INCLUDES 0g ADDED SUGARS* | 0% |

INGREDIENTS INCLUDING ALLULOSE

INGREDIENTS
Resistant Wheat Starch, Water, Butter, Wheat Protein, Buttermilk (Cultured Low Fat Milk, Nonfat Milk, Salt, Sodium Citrate, Vitamin A Palmitate, Vitamin D3), 2% or less of: Milled flaxseed, Leavening (Sodium Acid Pyrophosphate, Sodium Bicarbonate, Monocalcium Phosphate), Fava Bean Protein, Allulose*, Salt, Guar Gum, Sodium Bicarbonate, Rowan Berry Extract, Tapioca Starch and Egg.

WEBSITE ALLULOSE DISCLOSURE

*All figures listed per serving. Not a low calorie food. Allulose adds a dietarily insignificant amount of sugar which is not metabolized like other sugars. See nutrition facts.

Official website claim and manufacturer nutrition graphic.
Source: https://oliveoil.hero.co/products/buttermilk-biscuits?currency=USD&variant=48931204694209

4 / 9

## 05 Hero Cheddar Biscuit

**WEBSITE CLAIM**




**NUTRITION / INGREDIENTS GRAPHIC**




**WEBSITE SUGAR CLAIM**

0g Sugar

**DISCLOSED ALLULOSE CALCULATION**

20g TOTAL CARBOHYDRATES
-18g DIETARY FIBER
-1g ALLULOSE

**GRAPHIC ALLULOSE DISCLOSURE**

*Per serving. Not a low-calorie food. Contains allulose, see nutrition facts. Allulose adds a dietarily insignificant amount of sugar, which is not metabolized like other sugars.

**CARBOHYDRATE / SUGAR ROWS**

| | |
|---|---|
| TOTAL CARBOHYDRATE 20g | 7% |
| DIETARY FIBER 18g | 64% |
| TOTAL SUGARS 0g | |
| INCLUDES 0g ADDED SUGARS | 0% |

**INGREDIENTS INCLUDING ALLULOSE**

INGREDIENTS
Resistant Wheat Starch, Water, Butter, Wheat Protein, Cheddar Cheese (Pasteurized Milk, Cheese Culture, Salt, Enzymes, Annatto [color]), Buttermilk (Cultured Low Fat Milk, Nonfat Milk, Salt, Sodium Citrate, Vitamin A Palmitate, Vitamin D3), Contains less than 2% of Milled Flaxseed, Fava Bean Protein, Allulose*, Leavening (Sodium Acid Pyrophosphate, Sodium Bicarbonate, Monocalcium Phosphate), Guar Gum, Sodium Bicarbonate, Rowan Berry Extract, Tapioca Starch, Salt.

**WEBSITE ALLULOSE DISCLOSURE**

*All figures listed per serving. Not a low calorie food. Allulose adds a dietarily insignificant amount of sugar which is not metabolized like other sugars. See nutrition facts.

Official website claim and manufacturer nutrition graphic.
Source: https://oliveoil.hero.co/products/cheddar-biscuits?currency=USD&variant=47590572097729

5 / 9

## 06 Hero Pumpkin Spice Scone

**WEBSITE CLAIM**




**NUTRITION / INGREDIENTS GRAPHIC**




**WEBSITE SUGAR CLAIM**

0g sugar,

**DISCLOSED ALLULOSE CALCULATION**

27g TOTAL CARBOHYDRATES*
-14g DIETARY FIBER
-8g ALLULOSE*

**GRAPHIC ALLULOSE DISCLOSURE**

*Per serving. Not a low-calorie food. Contains allulose, see nutrition facts. Allulose adds a dietarily insignificant amount of sugar, which is not metabolized like other sugars.

**CARBOHYDRATE / SUGAR ROWS**

| | |
|---|---|
| TOTAL CARBOHYDRATE 27g | 10% |
| DIETARY FIBER 14g | 50% |
| TOTAL SUGARS 0g | |

**INGREDIENTS INCLUDING ALLULOSE**

INGREDIENTS
Resistant Wheat Starch, Butter, Pumpkin Puree, Allulose*, Wheat Protein, Whole Egg, Wheat Flour, Contains less than 2% of Leavening (Sodium Acid Pyrophosphate, Sodium Bicarbonate, Monocalcium Phosphate), Milled Flaxseed, Fava Bean Protein, Salt, Guar Gum, Sodium Bicarbonate, Pumpkin Spice Blend (Cinnamon, Ginger, Nutmeg, Allspice), Rowan Berry Extract, Tapioca Starch.

Official website claim and manufacturer nutrition graphic.
Source: https://oliveoil.hero.co/products/pumpkin-spice-scone?currency=USD&variant=49638527664321

6 / 9

## 07 Hero Orange Scone

**WEBSITE CLAIM**




**NUTRITION / INGREDIENTS GRAPHIC**




**WEBSITE SUGAR CLAIM**

0g sugar*,

**CARBOHYDRATE / SUGAR ROWS**

| | |
|---|---|
| TOTAL CARBOHYDRATE 26g | 9% |
| DIETARY FIBER 17g | 61% |
| TOTAL SUGARS 0g | |

**DISCLOSED ALLULOSE CALCULATION**

26g TOTAL CARBOHYDRATES*
-17g DIETARY FIBER
-7g ALLULOSE*

**INGREDIENTS INCLUDING ALLULOSE**

INGREDIENTS
Resistant Wheat Starch, Butter, Whole Ground Navel Orange, Allulose*, Wheat Protein, Whole Egg, Water, Contains less than 2% of Leavening (Sodium Acid Pyrophosphate, Sodium Bicarbonate, Monocalcium Phosphate), Milled Flaxseed, Fava Bean Protein, Salt, Guar Gum, Rowan Berry Extract, Sodium Bicarbonate, Tapioca Starch, Pure Orange Extract (Cane Alcohol, Orange Oil, Water), Sweet Proteins.

**GRAPHIC ALLULOSE DISCLOSURE**

*Per serving. Not a low-calorie food. Contains allulose, see nutrition facts. Allulose adds a dietarily insignificant amount of sugar, which is not metabolized like other sugars.

Official website claim and manufacturer nutrition graphic.
Source: https://oliveoil.hero.co/products/orange-scone?currency=USD&variant=49283554967745

7 / 9

## 08 Hero Lemon Poppy Seed Scone

WEBSITE CLAIM




NUTRITION / INGREDIENTS GRAPHIC




WEBSITE SUGAR CLAIM

0g sugar*,

DISCLOSED ALLULOSE CALCULATION

29g TOTAL CARBOHYDRATES
-18g DIETARY FIBER
-8g ALLULOSE*

GRAPHIC ALLULOSE DISCLOSURE

*Per Serving. Not a low-calorie food. See nutrition information for saturated fat content. Contains Allulose, which adds a dietarily insignificant amount of sugar, which is not metabolized like other sugars.

CARBOHYDRATE / SUGAR ROWS

| | |
|---|---|
| TOTAL CARBOHYDRATE 29g | 11% |
| DIETARY FIBER 18g | 64% |
| TOTAL SUGARS 0g | |

INGREDIENTS INCLUDING ALLULOSE

Resistant Wheat Starch, Butter, Water, Allulose*, Whole Egg, Wheat Protein, Lemon Juice, Wheat Flour, Leavening (Sodium Acid Pyrophosphate, Sodium Bicarbonate, Monocalcium Phosphate), Contains less than 2% of Milled Flaxseed, Fava Bean Protein, Poppy Seeds, Salt, Guar Gum, Sodium Bicarbonate, Pure Lemon Extract (Cane Alcohol, Lemon Oil, Water), Stevia Leaf Extract (Rebaudioside M), Rowan Berry Extract and Tapioca Starch.

Official website claim and manufacturer nutrition graphic.
Source: https://oliveoil.hero.co/products/lemon-poppy-seed-scone

8 / 9

## 09 Hero Pain au Chocolat

WEBSITE CLAIM




NUTRITION / INGREDIENTS GRAPHIC




WEBSITE SUGAR CLAIM

0g Sugar*

CARBOHYDRATE / SUGAR ROWS

| | |
|---|---|
| TOTAL CARBOHYDRATE 27g | 10% |
| DIETARY FIBER 18g | 64% |
| TOTAL SUGARS 0g | |
| INCLUDES 0g ADDED SUGARS* | 0% |

DISCLOSED ALLULOSE CALCULATION

27g TOTAL CARBOHYDRATES*
-18g DIETARY FIBER
-6g ALLULOSE*

INGREDIENTS INCLUDING ALLULOSE

INGREDIENTS
Resistant Wheat Starch, Water, Butter, Chocolate (Cocoa Mass, Allulose*, Cocoa Powder, Cocoa Butter, Sunflower Lecithin), Wheat Protein, Yeast, Egg, Less Than 2% Of: Milled Flaxseed, Fava Bean Protein, Salt, Milk, Jerusalem Artichoke Fiber, Apple Cider Vinegar, Guar Gum, Cultured Wheat Flour, Wheat Flour, Enzymes.

GRAPHIC ALLULOSE DISCLOSURE

*Per serving. Not a low-calorie food. Contains allulose, see nutrition facts. Allulose adds a dietarily insignificant amount of sugar, which is not metabolized like other sugars.

WEBSITE ALLULOSE DISCLOSURE

*All figures listed per serving. Not a low calorie food. Allulose adds a dietarily insignificant amount of sugar which is not metabolized like other sugars. See nutrition facts.

Official website claim and manufacturer nutrition graphic.
Source: https://oliveoil.hero.co/products/pain-au-chocolat

9 / 9

18. Defendant disseminated the Sugar Representations through the Products' packaging, official product pages, and authorized reproductions of the Products' front-label images on retail product pages. Defendant authored, created, supplied, authorized, approved, adopted, and disseminated the materially uniform representations and product images used on those pages.

19. The Sugar Representations communicate to reasonable consumers that the Products contain zero grams of sugar per labeled serving. That is the plain and ordinary meaning of "0G SUGAR."

20. However, these representations are false: Defendant's own product information discloses that the formulations identified below contain between 1 and 8 grams of allulose—a sugar—per labeled serving.

21. The Products' Nutrition Facts panels reinforce, rather than cure, the materially misleading impression created by the Sugar Representations. The panels declare zero grams of Total Sugars and zero grams of Added Sugars. Defendant's ingredient statements identify allulose. Where Defendant discloses allulose amounts in net-carbohydrate calculations, it presents those amounts as amounts to subtract rather than as sugar the Products contain.

22. Defendant's accompanying product information states that "Allulose adds a dietarily insignificant amount of sugar, which is not metabolized like other sugars." That disclosure reinforces, rather than cures, the materially misleading impression by stating that allulose is insignificant—*i.e.*, less than 1 gram—and that it is qualitatively different than the nutritional profile of sugar.

**C. <u>Allulose Is a Sugar</u>**

23. Allulose is a sugar.

24. Chemically, allulose is a monosaccharide. It is the C-3 epimer of D-fructose, meaning that allulose and fructose have the same molecular formula and connectivity but differ in the spatial orientation of a hydroxyl group at the third carbon. "D-allulose, a C-3 epimer of D-fructose, is a rare monosaccharide used as a food ingredient or a sweetener."[6] Allulose is accordingly "a rare sugar,"

[6] Han-Joo Maeng *et al.*, *Metabolic Stability of D-Allulose in Biorelevant Media and Hepatocytes: Comparison with Fructose and Erythritol*, 8 FOODS ART. 448, at 1 (2019), https://doi.org/10.3390/foods8100448.

and "a monosaccharide that is low in calories and that maintains approximately 70% of sweetness relative to sugar."[7]

25. Allulose is not merely a sugar as a matter of chemical classification. It is used as one. Allulose has "70% of the sweetness of sucrose, which means it is viewed as a potential alternative sweetener."[8] The food-science literature describes allulose and other rare sugars as "monosaccharides with sweetness similar to those as caloric sugars, but [with] low caloric values," which "are now widely used as sugar substitutes."[9]

26. Because allulose is less sweet than table sugar, it is used in gram-scale quantities as a bulk sweetener. High-intensity sweeteners such as saccharin, aspartame, acesulfame potassium, neotame, sucralose, and advantame are approximately 200 to 20,000 times as sweet as sucrose.[10] By contrast, allulose has approximately 70% of sucrose's sweetness and, as Defendant's own product information shows, is used in gram-scale quantities as a bulk sweetener.[11]

27. Allulose also behaves like sugar in food. "It is convenient for the food industry to use D-allulose, as its chemical properties are similar to those of fructose in terms of solubility, water activity, and viscosity."[12] It is used as "a partial replacement of added sugars."[13] Allulose is "widely regarded as a promising substitute for sucrose"—that is, a substitute for table sugar, and one that is itself a sugar.[14]

---

[7] Youngji Han et al., *Gastrointestinal Tolerance of D-Allulose in Healthy and Young Adults. A Non-Randomized Controlled Trial*, 10 NUTRIENTS ART. 2010, at 1–2 (2018), https://doi.org/10.3390/nu10122010.

[8] Maeng et al., *supra* note 6, at 2.

[9] *Id.*, *supra* note 6, at 9–10.

[10] U.S. FOOD & DRUG ADMINISTRATION, Aspartame and Other Sweeteners in Food, https://www.fda.gov/food/food-additives-petitions/aspartame-and-other-sweeteners-food (last visited Aug. 18, 2026).

[11] Mengting Tao, Wenli Zhang & Wanmeng Mu, *D-Allulose: A New Generation of Potential Bulk Sweeteners in the Food Industry*, 73 J. AGRIC. & FOOD CHEM. 27,833, 27,833–35 (2025) (Viewpoint), https://doi.org/10.1021/acs.jafc.5c13620.

[12] Han et al., *supra* note 7, at 10.

[13] *Id.*

[14] Wenli Zhang *et al.*, *D-Allulose, a Versatile Rare Sugar: Recent Biotechnological Advances and Challenges*, 63 CRITICAL REVS. FOOD SCI. & NUTRITION 5661, 5661 (2023) (published online Dec. 29, 2021), https://doi.org/10.1080/10408398.2021.2023091.

28. The Food and Drug Administration ("FDA") identifies allulose as a sugar. In its 2016 Nutrition Facts rulemaking, the FDA stated that allulose, "as a monosaccharide, must be included" in the Total Sugars declaration pending any future rulemaking that would otherwise exclude the substance.[15] The current regulation continues to define Total Sugars as "the sum of all free mono- and disaccharides" and does not exclude allulose. 21 C.F.R. § 101.9(c)(6)(ii).

29. The Calorie Control Council likewise describes allulose under the heading "Allulose is a Naturally Occurring Sweetener" and states that "[a] monosaccharide, or simple sugar, allulose is absorbed by the body, but not metabolized, so it is nearly calorie-free."[16]

30. Defendant's own product information admits that the Products contain allulose per labeled serving in the following amounts: 1 gram in the Classic Burger Buns, Classic Hot Dog Buns, Flour Tortilla, Buttermilk Biscuit, and Cheddar Biscuit; 8 grams in the Pumpkin Spice Scone; 7 grams in the Orange Scone; 8 grams in the Lemon Poppy Seed Scone; and 6 grams in the Pain au Chocolat. These disclosures appear outside the Nutrition Facts panels and independently contradict the Sugar Representations.

**D. <u>Products Violate the FDA Nutrient Content Regulations</u>**

31. Congress empowered the FDA to oversee and regulate food labeling by enacting the Federal Food, Drug, and Cosmetic Act, as amended by the Nutrition Labeling and Education Act, 21 U.S.C. § 301 *et seq.* FDA promulgated the relevant food-labeling regulations in 21 C.F.R. part 101.

32. FDA regulations distinguish mandatory or permitted declarations within the Nutrition Facts panel from nutrient-content claims appearing elsewhere on a label or in labeling. Information appearing as part of the Nutrition Facts panel is not itself a nutrient-content claim. 21 C.F.R. § 101.13(c). By contrast, the Sugar Representations appear outside the Nutrition Facts panel on the front labels and official product pages identified above, including product information accompanying the Products, and expressly characterize the level of sugar in the Products.

---

[15] *Food Labeling: Revision of the Nutrition and Supplement Facts Labels*, 81 Fed. Reg. 33,742, 33,796 (May 27, 2016).

[16] CALORIE CONTROL COUNCIL, *Allulose*, https://caloriecontrol.org/ingredients/sweeteners/allulose/ (last visited September 14, 2026).

33. Nutrient-content claims are strictly forbidden unless specifically allowed under FDA regulations. 21 C.F.R. § 101.13(b) ("A claim that expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling under § 101.9 or under § 101.36 (that is, a nutrient content claim) may not be made on the label or in labeling of foods unless the claim is made in accordance with this regulation and with the applicable regulations in subpart D . . . .").

34. The Sugar Representations are expressed nutrient-content claims. An expressed nutrient content claim is "any direct statement about the level (or range) of a nutrient in the food, e.g., 'low sodium' or 'contains 100 calories.'" 21 C.F.R. § 101.13(b)(1). A statement of a nutrient's quantity is the regulation's own example of such a claim.

35. Section 101.13(i) governs statements of the amount of a nutrient appearing outside the Nutrition Facts panel. It permits such a statement only if one of three conditions is met: the statement implicitly characterizes the level of the nutrient and is consistent with a definition for a claim provided in subpart D, *id.* § 101.13(i)(1); the statement implicitly characterizes the level and is not consistent with such a definition, in which case it must be accompanied by an adjacent disclaimer that the food is not "low" in the nutrient, *id.* § 101.13(i)(2); or the statement does not in any way implicitly characterize the level of the nutrient and "is not false or misleading in any respect," *id.* § 101.13(i)(3).

36. The Sugar Representations are quantitative statements of the amount of sugar in the Products. Paragraph (i)(3) permits a statement of the amount of a nutrient that does not implicitly characterize its level only if the statement "is not false or misleading in any respect." And to the extent the Sugar Representations are construed to implicitly characterize the level of sugar in the Products and are not consistent with a definition in subpart D, paragraph (i)(2) permits them only where the label bears an adjacent disclaimer that the food is not "low" in that nutrient. No such adjacent disclaimer states that the Products are not low in sugar. The Sugar Representations are impermissible under either applicable paragraph.

37. Alternatively, to the extent the Sugar Representations are construed as claims that sugar is absent, they are subject to the definition for sugar-free claims under 21 C.F.R. §§ 101.13(i)(1) and 101.60(c)(1). Section 101.60(c)(1)(i) requires less than 0.5 gram of sugars per

reference amount customarily consumed and per labeled serving. The disclosed allulose amounts identified above exceed 0.5 gram per labeled serving and therefore fail the labeled-serving requirement, independently of the reference-amount requirement.

38. Section 101.60(c)(1)(ii) permits specified ingredient disclosures, including “adds a dietarily insignificant amount of sugar.” That ingredient-disclosure provision does not dispense with the separate quantity requirement in subsection (i). The conditions are conjunctive. Thus, even if that statement satisfies the ingredient-disclosure condition in subsection (ii), it cannot make a sugar-free claim lawful for a Product that fails subsection (i). Nor does describing allulose as “not metabolized like other sugars” establish that its amount is zero.

39. Sugar is a nutrient “of the type required to be in nutrition labeling under § 101.9.” 21 C.F.R. § 101.13(b). Section 101.9(c)(6)(ii) defines Total Sugars as “the sum of all free mono- and disaccharides.” That same definition governs the Sugar Representations, because compliance with the requirements for nutrient-content claims is determined using the analytical methodology prescribed for nutrition labeling in § 101.9. Id. § 101.13(o). Allulose, as a free monosaccharide and the C-3 epimer of D-fructose, falls squarely within that definition and must be included in measuring the Products' sugar content. Measured that way, the Sugar Representations are false. Defendant’s own product information discloses the allulose amounts identified above, ranging from 1 to 8 grams per labeled serving. Those disclosed amounts cannot be expressed as zero under the applicable rounding rule, which permits zero only when a serving contains less than 0.5 gram of sugars. Id. § 101.9(c)(6)(ii). The Sugar Representations are false and, at minimum, materially misleading, and they violate 21 C.F.R. § 101.13(i).

40. Because the Products’ labels and labeling bear false, misleading, and impermissible outside-panel nutrient-content claims, the Products are misbranded under federal law. 21 U.S.C. § 343(a)(1), (r)(1)(A); 21 C.F.R. §§ 101.9(c)(6)(ii), 101.13(b), (b)(1), (c), (i)(2)–(3), and (o); and, under the alternative absence-claim construction, §§ 101.13(i)(1) and 101.60(c)(1). Misbranded food may not lawfully be introduced or delivered for introduction into interstate commerce. 21 U.S.C. § 331(a).

41. Plaintiffs do not seek to enforce the FDCA directly. They challenge only the outside-panel Sugar Representations; they do not challenge the Nutrition Facts declarations or seek to require a different Nutrition Facts methodology. They seek relief under independently enforceable state consumer-protection and food-labeling laws, including California's Sherman Law, Cal. Health & Safety Code §§ 110100(a), 110660, and 110670, and his state-law claims seek to enforce requirements identical to 21 U.S.C. § 343(a)(1) and 21 C.F.R. § 101.13(i), including the applicable requirements of § 101.60(c)(1) under the alternative construction described above, not requirements different from or additional to federal law. Plaintiffs independently allege that the Sugar Representations mislead reasonable consumers.

**E. <u>Defendant's Conduct Violates California's Food Labeling Laws</u>**

42. Defendant's labeling, including the outside-panel Sugar Representations, and its distribution and sale of the Products violate the misbranding provisions of California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq. (the "Sherman Law"), which adopts federal food-labeling regulations as California regulations. Cal. Health & Safety Code § 110100(a).

43. Defendant's labeling, distribution, and sale of the Products violate the Sherman Law's misbranding provisions, including:

(a) Section 110660 (a food is misbranded if its labeling is false or misleading in any particular);

(b) Section 110670 (a food is misbranded if its labeling does not conform with the requirements for nutrient-content or health claims set forth in 21 U.S.C. § 343(r));

(c) Section 110760 (making it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded);

(d) Section 110765 (making it unlawful for any person to misbrand any food); and

(e) Section 110770 (making it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food).

44. Defendant's labeling, distribution, and sale of the Products also violate the Sherman Law's false-advertising provisions, including:

(a) Section 109885, which defines "advertisement" to include representations on products and their packages, and Section 110390, which prohibits dissemination of food advertisements that are false or misleading in any particular;

(b) Section 110395 (making it unlawful to manufacture, sell, deliver, hold, or offer to sell any falsely or misleadingly advertised food);

(c) Sections 110398 and 110400 (making it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely or misleadingly advertised).

45. Because the Products bear or are marketed with the Sugar Representations despite containing the disclosed allulose amounts identified above, the Products are misbranded and falsely advertised under California law, and Defendant's labeling, distribution, and sale of the Products are unlawful.

**F. <u>Reasonable Consumers Cannot Detect Defendant's Deception</u>**

46. Reasonable consumers have no reason to search elsewhere on a package or retail product page when presented with the conspicuous Sugar Representations that the Products contain zero grams of sugar per labeled serving. Consumers are not expected to look beyond a misleading representation on the front of a package to discover that the representation is false. Reasonable consumers rely on the conspicuous Sugar Representations at the point of sale.

47. Allulose is not a common household name. Reasonable consumers, including Plaintiffs, are unlikely to recognize the term or to infer from the ingredient list or net-carbohydrate equation alone that it is a sugar that must be included when assessing an outside-panel sugar-amount claim.

48. But even if consumers examine Defendant's ingredient statements and product information, those disclosures reinforce the misleading impression. The Nutrition Facts panels declare zero grams of Total Sugars and zero grams of Added Sugars. Furthermore, the disclosure that "[a]llulose adds a dietarily insignificant amount of sugar, which is not metabolized like other sugars" reinforces that the Products contain less than 1 gram of sugar, which they do not, and affirmatively distinguishes allulose from actual sugar by emphasizing its unique nutritional profile. Finally, Defendant invites consumers to subtract the disclosed allulose amounts to determine net carbohydrates. In context, these assurances tell consumers that the sugar added by allulose can be disregarded when evaluating Defendant's representation that the Products contain zero grams of sugar. While distinguishing how allulose is metabolized could be accurate, using that distinction to support a representation about the amount of sugar makes consumers believe that the Products contain no sugar despite the disclosed gram-scale quantities of allulose. That is false and materially misleading.

49. Consumers are also not required to conduct independent scientific testing or research into the chemical classification of listed ingredients, to reconcile separate label components, or to perform arithmetic to verify express label claims. Reasonable consumers do not possess specialized knowledge of carbohydrate chemistry or federal labeling law. Defendant is responsible for ensuring that its express labeling and marketing claims are truthful and not misleading.

### G. <u>Defendant Knew the Sugar Representations Were False</u>

50. Defendant knew, or should have known, that the Sugar Representations were false, misleading, deceptive, and unlawful when it marketed, advertised, labeled, distributed, and sold the Products. Specifically, Defendant knew that (a) the Products contain the allulose amounts identified above; (b) allulose is a sugar; (c) the Sugar Representations state that the Products contain zero grams of sugar per labeled serving; (d) the Nutrition Facts panels repeat zero grams of Total Sugars; (e) the net-carbohydrate calculations described above separately quantify allulose; (f) reasonable consumers would rely on the Sugar Representations; (g) consumers would not receive the represented benefit of the bargain; (h) the Sugar Representations enabled Defendant to charge a premium; and (i) no adjacent disclaimer states that the Products are not low in sugar.

51. Defendant formulates the Products and controls the ingredient statements, Nutrition Facts panels, packaging, and official product information. Defendant lists allulose as an ingredient and states the allulose amounts in the product information identified above, while printing the Sugar Representations prominently on the Products' front labels and official product pages. Defendant, as the formulator, marketer, and distributor of the Products, controlled, authored, supplied, authorized, approved, adopted, or materially participated in making the Sugar Representations. Those facts demonstrate that Defendant knew how much allulose the Products contained while making the challenged representations.

52. Defendant could have stopped using the Sugar Representations, accurately qualified them, or ensured that they were true, but chose not to. Despite its knowledge that consumers reasonably rely on the Sugar Representations, Defendant chose to continue using them, thereby causing consumers to buy or overpay for the Products.

**H. <u>Defendant's Sugar Representations Injured Plaintiffs and the Classes</u>**

53. Defendant concealed or failed to disclose material facts necessary to prevent the Sugar Representations from misleading consumers, including (a) that the Products' allulose content contradicts the Sugar Representations; (b) that the Products' zero-gram Sugar Representations exclude the disclosed allulose amounts; (c) each Product's sugar content under 21 C.F.R. § 101.9(c)(6)(ii); (d) the facts that render the Sugar Representations false, misleading, or noncompliant under 21 C.F.R. § 101.13(i); and (e) that the Products are misbranded under federal and—with respect to Plaintiffs and the California Subclass—California law, when sold bearing or marketed with the Sugar Representations.

54. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive Sugar Representations and omissions, Defendant injured Plaintiffs and the Class Members in that they: (a) paid money for products that were not as represented; (b) paid a premium for the Products; (c) were deprived of the benefit of their bargains; and (d) purchased misbranded Products that could not lawfully have been sold because they violate FDA requirements and, for Plaintiffs and California Subclass Members, California's Sherman Law.

55. Illinois law also incorporates applicable federal food-labeling regulations into Illinois law. *See* 410 ILCS 620/21(j) ("[a] federal regulation automatically adopted pursuant to this Act takes effect in this State on the date it becomes effective as a Federal regulation."). Federal regulations provide that "sugars" include "all free mono- and disaccharides." 21 C.F.R. § 101.9(c)(6)(ii). Allulose is a monosaccharide and therefore constitutes a sugar under this regulatory definition.

56. Accordingly, Plaintiffs and the Class Members suffered injury in fact and lost money or property because of Defendant's wrongful conduct.

**I. Plaintiffs Lack an Adequate Remedy at Law**

57. Plaintiffs lack an adequate remedy at law for the future harm described above. Damages cannot remedy his inability to rely on Defendant's Sugar Representations when deciding whether to purchase the Products in the future. Only injunctive relief requiring Defendant to cease or correct the misleading Sugar Representations can address that prospective harm.

58. Equitable relief is also necessary because legal remedies may prove inadequate to provide complete relief, including restitution measured by the difference between the prices Plaintiffs and Class Members paid and the value of the Products as received, which may not be coextensive with damages.

59. Equitable relief is additionally appropriate because the statutes of limitations for the asserted causes of action vary. The UCL carries a four-year limitations period, which may reach purchases not fully remediable under other causes of action.

60. The scope of actionable misconduct under the FAL and UCL is also broader than under other potential causes of action. The FAL and UCL prohibit Defendant's fraudulent labeling and advertising scheme. The UCL may also borrow statutory prohibitions that do not themselves create a private cause of action.

## CLASS ACTION ALLEGATIONS

61. Plaintiffs bring this action on behalf of themselves and all others similarly situated under Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3). The proposed classes are defined below (collectively, the "Classes"):

**Nationwide Class:** All persons in the United States who, during the maximum period of time permitted by law, purchased one or more of the Products for their personal use while those Products contained allulose and bore or were marketed with a Sugar Representation.

62. Plaintiff Martin seeks to represent a subclass defined as:

**California Subclass:** All persons in California who, during the maximum period of time permitted by law, purchased one or more of the Products for their personal use while those Products contained allulose and bore or were marketed with a Sugar Representation.

63. Plaintiff Allen seeks to represent a subclass defined as:

**Illinois Subclass:** All persons in Illinois who, during the maximum period of time permitted by law, purchased one or more of the Products for their personal use while those Products contained allulose and bore or were marketed with a Sugar Representation.

64. The Classes do not include: (1) Defendant or its officers or directors; (2) the Judge or Magistrate Judge assigned to this action; (3) the assigned Judge's or Magistrate Judge's staff and family; or (4) Plaintiffs' counsel or Defendant's counsel.

65. Plaintiffs reserve the right to amend the class definitions and add classes or subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

66. **Community of Interest:** There is a well-defined community of interest among members of the Classes, and the disposition of their claims in a single action will provide substantial benefits to all parties and to the Court.

67. **Numerosity:** While the exact number of Class Members is unknown to Plaintiffs and can be determined only through discovery, upon information and belief, they number at least in the thousands, and joinder is impracticable. Class Members may be notified through Defendant's and third-party retailers' distribution and sales records and by publication.

68. **Existence and Predominance of Common Questions of Law and Fact:** Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual members. These common legal and factual questions include, but are not limited to:

(a) Whether allulose is a free monosaccharide and sugar;

(b) Whether the Products contain the allulose amounts identified above and fail the governing conditions for the Sugar Representations, including 21 C.F.R. § 101.13(i) and, under the alternative absence-claim construction, § 101.60(c)(1);

(c) Whether reasonable consumers would understand Defendant's representations concerning the Products to be untrue or misleading;

(d) Whether Defendant's representations were material;

(e) Whether the Products are misbranded and violate California and Illinois law;

(f) Whether Defendant was unjustly enriched as a result of the unlawful conduct alleged in this Complaint;

(g) Whether Plaintiffs and Class Members suffered economic injury as a result of Defendant's actions and the amount of restitution to which they are entitled;

(h) Whether Plaintiffs and Class Members are entitled to attorneys' fees and costs.

69. **Typicality:** Plaintiffs' claims are typical of those of other Class Members because Plaintiffs were exposed to a Sugar Representation, purchased a Products in reliance on it, and suffered the same type of economic loss.

70. **Adequacy:** Plaintiffs will fairly and adequately represent and protect the Classes' interests as required by Federal Rule of Civil Procedure 23(a)(4). Plaintiffs have no interests adverse to the Classes, is committed to vigorous prosecution, and has retained skilled and experienced counsel.

71. **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of the asserted claims under Federal Rule of Civil Procedure 23(b)(3) because

the expense and burden of individual litigation make it economically infeasible for Class Members to seek redress outside a class action. Even if Class Members could afford individual litigation, the burden on the courts would be substantial. Individualized litigation would risk varying or contradictory judgments and magnify delay and expense through repeated trials of the same factual issues. By contrast, maintaining this action as a class action with respect to some or all issues presents fewer management difficulties, conserves party and judicial resources, and protects each Class Member's rights. Plaintiffs anticipate no difficulty managing this action as a class action. Classwide relief is essential to compel compliance with applicable consumer-protection laws, and separate actions could subject Defendant to inconsistent obligations.

## CAUSES OF ACTION

### COUNT I

**Violation of California's Consumers Legal Remedies Act**
**Cal. Civ. Code § 1750, *et seq.***
**(On behalf of Plaintiff, the Nationwide Class, and California Subclass)**

72. Plaintiff Martin incorporates by reference and re-alleges the allegations contained in all preceding paragraphs of this Complaint.

73. Plaintiff brings this claim individually and on behalf of Nationwide Class and California Subclass against Defendant.

74. Civil Code §1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have."

75. Civil Code §1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

76. Civil Code §1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised."

77. Defendant labeled and sold its Products as having zero grams of sugar despite containing allulose, a sugar.

78. Defendant's wrongful business practices constituted, and still constitute, a continuing course of conduct in violation of the CLRA.

79. Pursuant to Civ. Code § 1780, Plaintiff and the California Subclass seek: (a) actual damages in an amount to be determined at trial; (b) an order enjoining Defendant from continuing its violative acts and practices; (c) restitution of all money and property lost by Plaintiff and the members of the Classes as a result of Defendant's unlawful conduct; and (d) any other relief that the Court deems proper; and (e) attorneys' costs and fees.

**COUNT II**
**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(On Behalf of Plaintiff Martin, the Nationwide Class, and the California Subclass)**

80. Plaintiff Martin incorporates by reference and re-alleges the allegations contained in all preceding paragraphs of this Complaint.

81. Plaintiff brings this claim individually and on behalf of Nationwide Class and California Subclass against Defendant.

82. Defendant violated California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200–17210, by engaging in unlawful, unfair, and fraudulent business practices.

83. The UCL defines unfair competition to "mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." Cal. Bus. & Prof. Code § 17200. A business act or practice is unlawful if it violates any established state or federal law. A practice is unfair if it (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. The UCL allows a person who has suffered injury in fact and lost money or property to prosecute a civil action for violation of the UCL. Cal. Bus. & Prof. Code § 17204.

84. Defendant's acts, as described above, constitute unlawful, unfair, and fraudulent business practices pursuant to California Business & Professions Code § 17200 *et seq.*

85. Defendant violated the UCL's proscription against unlawful business practices through its violations of the FAL, Cal. Bus. & Prof. Code § 17500 *et seq.*; the CLRA, Cal. Civ. Code

§ 1750 *et seq.*; and the Sherman Law, including Cal. Health & Safety Code §§ 110100, 110390, 110395, 110398, 110400, 110660, 110670, 110760, 110765, and 110770. Through the Sherman Law's adoption of federal food-labeling requirements, Defendant also violated the parallel standards in 21 U.S.C. § 343(a)(1), (r)(1)(A) and 21 C.F.R. §§ 101.9(c)(6)(ii), 101.13(b), (b)(1), (c), (i)(2)–(3), and (o); and, under the alternative absence-claim construction, §§ 101.13(i)(1) and 101.60(c)(1).

86. Defendant also violated the UCL's proscription against unfair business practices. Defendant's acts, omissions, misrepresentations, practices, and nondisclosures are substantially injurious to consumers, offend public policy, and are immoral, unethical, oppressive, and unscrupulous. The gravity of Defendant's conduct outweighs any asserted benefit. There is no utility in representing that Products containing the disclosed allulose amounts identified above contain zero grams of sugar. Defendant's false and misleading representations also disadvantage competitors that either do not make similar claims or formulate their products to conform to them.

87. Plaintiff Martin, the Nationwide Class, and California Subclass Members suffered substantial injury by buying Products they would not have purchased absent Defendant's unlawful, fraudulent, and unfair labeling, packaging, advertising, and omissions concerning allulose.

88. The gravity of Defendant's conduct outweighs any justification, particularly considering lawful alternatives. Defendant could have removed the Sugar Representations, accurately qualified them, or reformulated the Products. Its conduct offends established public policy and substantially injures Plaintiff, the Nationwide Class, and California Subclass Members.

89. Plaintiff Martin, the Nationwide Class, and California Subclass Members could not reasonably have avoided their injury or known that the prominent labeling and advertising were inaccurate. Consumers lack specialized knowledge to identify allulose as a free monosaccharide and are not required to reconcile the Sugar Representations with the Nutrition Facts and ingredient information.

90. Under California Business & Professions Code § 17203, Plaintiff, the Nationwide Class, and California Subclass Members seek restitution, injunctive relief, attorneys' fees, and all other relief the Court deems proper.

**COUNT III**
**Violation of California's False Advertising Law**
**Cal. Bus. & Prof. Code § 17500**
**(On Behalf of Plaintiff Martin, the Nationwide Class, and California Subclass)**

91. Plaintiff Martin incorporates by reference and re-alleges the allegations contained in all preceding paragraphs of this Complaint.

92. Plaintiff brings this claim on behalf of himself, the Nationwide Class, and California Subclass against Defendant.

93. Defendant's acts and practices have deceived or are likely to deceive members of the Nationwide Class and California Subclass and the public. Defendant makes the Sugar Representations on the Products' front labels and official product pages as identified above, even though the formulations identified above contain between 1 and 8 grams of allulose, a sugar, per labeled serving.

94. Defendant has disseminated materially uniform labeling and advertising regarding the Products throughout California and the United States. The labeling and advertising were unfair, deceptive, untrue, or misleading within the meaning of Cal. Bus. & Prof. Code § 17500 and were intended and likely to deceive consumers.

95. In making and disseminating these statements, Defendant knew, or should have known, its labeling and advertising were untrue or misleading. Plaintiff Martin, Nationwide Class and California Subclass Members based their purchasing decisions on the materially false Sugar Representations and were injured in fact and lost money or property as a result.

96. Defendant's misrepresentations concerning the material facts described above constitute false and misleading advertising and therefore violate Cal. Bus. & Prof. Code § 17500 *et seq*.

97. Plaintiff Martin and members of the Nationwide Class and California Subclass seek restitution, injunctive relief, attorneys' fees, and all other relief the Court deems proper.

**COUNT VI**
**Violation of Illinois Consumer Fraud and Deceptive Business Practices Act**
**815 § 505/1 *et seq*. ("ICFA")**
**(On Behalf of Plaintiff Allen and the Illinois Subclass)**

98. Plaintiff Allen incorporates by reference and re-alleges the allegations contained in all preceding paragraphs of this Complaint.

99. Plaintiff brings this claim on behalf of herself and the Illinois Subclass against Defendant.

100. Plaintiff and other Illinois Class members are persons within the context of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1(c).

101. Defendant is a person within the context of the ICFA, 815 ILCS 505/1(c).

102. Plaintiff Allen and the proposed Illinois Subclass are "consumers" who purchased the Products for personal, family, or household use within the meaning of the ICFA, 815 ILCS 505/1(e).

103. In its sale of the Products throughout the State of Illinois, at all relevant times herein, Defendant conducted business and trade within the meaning and intendment of the ICFA, 815 § 505/2.

104. The ICFA, 815 ILCS 505/2, prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce.

105. The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices, including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("UDTPA"). 815 ILCS 505/2.

106. By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices by conspicuously representing on the Products' front labels that the Products contained zero sugar. Those representations are false or misleading because Defendant adds allulose—a sugar—to the Products during processing. The Products do not conform to Defendant's Representations.

107. The foregoing deceptive acts and practices were directed at consumers.

The foregoing deceptive acts and practices are misleading in a material way because they misrepresent the nature, composition, sugar content, quality, and value of the Products.

108. As a result of Defendant's deceptive practices, the Illinois Subclass members suffered an economic injury because they would not have purchased the Products, or would have paid less for them, had they known that Defendant adds sugar to the Products and did not conform to the zero sugar Representations.

109. On behalf of herself and the Illinois Subclass members, Plaintiff seeks to recover actual economic damages and reasonable attorneys' fees and costs, as provided under ILCS 815 505/10a. Plaintiff and the Illinois Subclass are also entitled to injunctive relief, seeking an order enjoining Defendant's unfair and/or deceptive acts and practices.

**COUNT V**
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Nationwide Class)**

110. Plaintiffs incorporate by reference and re-allege the allegations contained in all preceding paragraphs of this Complaint.

111. Plaintiffs bring this claim individually and on behalf of the Nationwide Class against Defendant under California law or, in the alternative, under the substantially similar laws of the states applicable to Nationwide Class Members.

112. To the extent required, Plaintiffs assert this cause of action in the alternative to their other claims, as permitted by Federal Rule of Civil Procedure 8.

113. Defendant's false and misleading Sugar Representations caused Plaintiffs and Class Members to pay a price premium for the Products.

114. Defendant thereby received a direct and unjust benefit at the expense of Plaintiffs and Class Members.

115. Plaintiffs and Class Members seek the return of that unjust benefit.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seeks judgment against Defendant as follows:

a) For an order certifying the Classes under Fed. R. Civ. P. 23, naming Plaintiffs as representatives of the Classes, and appointing Plaintiffs' Counsel as Class Counsel;

b) For an order declaring that Defendant's conduct violates each of the statutes referenced herein;

c) For actual damages available under the asserted causes of action;

d) For prejudgment interest on all amounts awarded;

e) For restitution to the extent permitted by applicable law;

f) For injunctive relief as pleaded or as the Court may deem proper;

g) For an order awarding Plaintiff's and the Classes' reasonable attorneys' fees, expenses, and costs of suit; and

h) For such other and further relief as the Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable as of right.

Respectfully submitted,

Dated: November 23, 2026

**BURSOR & FISHER, P.A.**

By: */s/ L. Timothy Fisher*
L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
jglatt@bursor.com

**GUCOVSCHI LAW FIRM, PLLC.**
Adrian Gucovschi (State Bar No. 360988)
Nathaniel Haim Sari (State Bar No. 362634)
165 Broadway, 23rd Floor
New York, NY 10006
Telephone: (212) 884-4230

Facsimile: (212) 884-4230
E-Mail: adrian@gucovschilaw.com
nathaniel@gucovschilaw.com

*Attorneys for Plaintiffs*